IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

L. ALBERT LEWIS,

    Petitioner,                      No. MISC S-11-0039 WBS DAD PS

    v.

UNITED STATES OF AMERICA,      <u>ORDER AND</u>
                                                <u>FINDINGS AND RECOMMENDATIONS</u>
et al.,

    Respondents.

_____/

        Petitioner, L. Albert Lewis, seeks to quash an Internal Revenue Service ("IRS") summons pursuant to 26 U.S.C. § 7609(b)(2). The case has been referred to the undersigned pursuant to Local Rule 72-302(c)(10). Respondents have opposed the motion to quash by moving to dismiss it. Petitioner has filed opposition to the motion to dismiss and respondents have filed a reply.[1]

BACKGROUND

        Respondent asserts that on January 6, 2003, the IRS assessed petitioner with unpaid federal income tax for the 1998 and 1999 tax years, and on November 13, 2003, filed a

---

[1] Petitioner has also filed a motion to proceed in forma pauperis that makes the showing required by 28 U.S.C. § 1915(a)(1). (Doc. No. 2.) Petitioner's request for leave to proceed in forma pauperis will therefore be granted.

Notice of Federal Tax Lien against petitioner. (MTD (Doc. No. 3-1) at 2.[2]) Petitioner, an oral surgeon, was subsequently convicted of conspiracy to defraud the United States in a scheme promoted by Tower Executive Resources to inflate petitioner's medical expenses and hide his income in offshore accounts. (Id.) The IRS is now attempting to collect from petitioner income tax liability for the tax years 1998, 1999, 2001, 2002 and a civil frivolous filing penalty for the 2007 tax year. (Id.)

In the course of this process the IRS learned that petitioner had purchased a parcel of real property in Danville, California. Petitioner purchased the Danville property in 1992, and subsequently transferred the property to the Diablo Vista Trust in July of 2002. (Id.) After a series of transfers for no consideration to various related entities, the Veritas Institute obtained title to the property. (Id. at 2-3.) The Veritas Institute then sold the Danville property and purchased a parcel of real property in Verdi, Nevada. (Id. at 3.)

As part of his investigation into petitioner's individual income tax liabilities, IRS Revenue Agent Greg Yarbrough repeatedly requested information relating to the transactions outlined above from petitioner but petitioner refused to comply. (Id.) Therefore, on March 22, March 23 and March 24, 2011, Officer Yarbrough issued five summonses to four different parties seeking records concerning the real property transactions involving the Danville property, the Verdi property and the Veritas Institute. (Id.) Petitioner now seeks to quash these summonses.[3] (Pet. (Doc. No. 1.))

/////
/////
/////

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

[3] The arguments found in petitioner's petition to quash are both lengthy, confusing and unclear. Accordingly, the court has attempted herein to characterize petitioner's arguments in the most clear and concise manner possible.

ANALYSIS

A. Sovereign Immunity and Subject Matter Jurisdiction

Petitioner invokes the jurisdiction of this court under 26 U.S.C. § 7609(b). (Pet. (Doc. No. 1) at 3.) Respondent, however, asserts that this court lacks jurisdiction over petitioner's motion to quash under 26 U.S.C. § 7609. In this regard, respondent argues that because he was not named in the summonses and because the law provides that under these circumstances he was not entitled to receive notice of the summonses because they were issued to aid in the collection of an assessment made against petitioner. (MTD (Doc. No. 3-1) at 4-6.) According to respondent, because petitioner was not entitled to receive notice of the summonses he lacks standing to petition the court to quash those summonses. (Id. at 7-8.)

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287 (1983). Similarly, no federal agency can be sued unless Congress has explicitly revoked that agency's immunity. Gerritsen v. Consulado General de Mexico, 989 F.2d 340, 343 (9th Cir. 1993); City of Whittier v. U.S. Dep't of Justice, 598 F.2d 561, 562 (9th Cir. 1979). Put another way, no court has jurisdiction to award relief against the United States or a federal agency unless the requested relief is expressly and unequivocally authorized by federal statute. United States v. King, 395 U.S. 1, 4 (1969) (citing United States v. Sherwood, 312 U.S. 584, 586-87 (1941)). If conditions are attached to legislation that waives the sovereign immunity of the United States, the conditions must be strictly observed by the courts, and exceptions are not to be readily implied. Block, 461 U.S. at 287. See also Cato v. United States, 70 F.3d 1103, 1107 (9th Cir. 1995) ("The terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit.").

The exclusive statute providing courts with authority to quash an IRS summons is 26 U.S.C. § 7609(b). "Section 7609(b)(2) constitutes the government's consent to waive sovereign immunity and subject itself to a legal challenge in court." Mollison v. U.S., 568 F.3d

1973, 1075 (9th Cir. 2009).  Section 7609(b)(2)(A) confers standing only upon those persons entitled to notice of the summons pursuant to § 7609.  In this regard, 26 U.S.C. § 7609(c)(2)(D)(i) provides that the notice requirement and procedures to quash summons do not apply to any summons "issued in aid of the collection of an assessment made . . . against the person with respect to whose liability the summons is issued."  Accordingly, "a third party should receive notice that the IRS has summonsed the third party's records unless the third party was the assessed taxpayer, a fiduciary or transferee of the taxpayer, or the assessed taxpayer had 'some legal interest or title in the object of the summons.'"  Viewtech, Inc. v. U.S., 653 F.3d 1102, 1105 (9th Cir. 2011) (quoting Ip v. United States, 205 F.3d 1168, 1175 (9th Cir. 2000)).  See also Remedios v. Wells Fargo Bank, No. Misc. S-050482-MCE-CMK, 2006 WL 1305282, at *1 (E.D. Cal. May 11, 2006) ("In other words, the taxpayer under investigation has no right to notice of a summons issued to collect a tax owed by that taxpayer.").

        Here, the summonses seek information relating to petitioner's ownership or interest in the Danville property, the Verdi property or the Veritas Institute.  (Yarbrough Decl. (Doc. No. 3-2) at 4.)  Petitioner is the assessed taxpayer and therefore was not entitled to receive notice of these summonses.  See Viewtech, 653 F.3d at 1106 ("He is the assessed taxpayer, and therefore is disqualified from notice under § 7609(c)(2)(D)(I)."); Cardinal Manao Sendatsu v. United States, Civil No. 11-00610 LEK-KSC, 2012 WL 628906, at *3 (D. Hawaii Feb. 9, 2012) ("As the assessed taxpayer, Dr. Carlson is disqualified from notice under § 7609(c)(2)(D)(I)."). Without the right to notice, petitioner has no standing to petition to quash the summonses in question and this court lacks subject matter jurisdiction.[4]  See Viewtech, 653 F.3d at 1104; Ip, 205 F.3d at 1170 n.3.

/////

---

[4] Though petitioner was not legally entitled to notice of the summonses, he was nonetheless provided with such notice by the government.  (See Doc. No. 3-5 at 3; Doc. No. 3-6 at 3; Doc. No. 3-7 at 3; Doc. No. 3-8 at 3; Doc. No. 3-9 at 3.)

II. Petition to Quash

Even if the court had subject matter jurisdiction, petitioner's petition to quash should still be denied because respondent has established a prima facie case for enforcement of the summonses and petitioner has failed to rebut respondent's prima facie case.

The IRS is permitted to determine a person's tax liability by examining the person's documents, taking the person's testimony, and issuing summonses. 26 U.S.C. § 7602(a) (authorizing the IRS to issue summonses for the purposes of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax . . . or collecting any such liability"). The powers granted to the IRS for determining tax liability are to be "liberally construed in recognition of the vital public purposes which they serve," and the restriction contained in 26 U.S.C. § 7605(b) against unnecessary examinations or investigations is "not to be read so broadly as to defeat them." De Masters v. Arend, 313 F.2d 79, 87 (9th Cir. 1963). See United States v. Arthur Young & Co., 465 U.S. 805, 814 (1984) (noting "Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation") (emphasis in original); Speck v. United States, 59 F.3d 106, 108 (9th Cir. 1995) (noting the Supreme Court's recognition in Arthur Young & Co. that Congress granted the IRS "expansive information-gathering authority").

A taxpayer identified in an IRS summons served on a third party recordkeeper may bring a proceeding to quash the summons, and the government, in turn, may seek to compel compliance with the summons.[5] 26 U.S.C. § 7609(b)(2)(A).

> To defeat a petition to quash, . . . the government must establish that (1) the investigation will be conducted for a legitimate purpose; (2) the material being sought is relevant to that purpose; (3) the information sought is not already in the IRS's possession;

---

[5] In the present case, respondent seeks denial of the petition to quash, rather than enforcement of the summonses, because most of the records sought by the summonses have already been produced. The documents produced have been set aside and have not been reviewed pending resolution of the pending petition to quash. (Yarbrough Decl. (Doc. No. 3-2) at 4.)

> and (4) the IRS complied with all the administrative steps required by the Internal Revenue Code. See United States v. Powell, 379 U.S. 48, 57-58 (1964). "The government's burden is a slight one, and may be satisfied by a declaration from the investigating agent that the Powell requirements have been met." United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir. 1993). The burden is minimal "because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." Liberty Fin. Servs. v. United States, 778 F.2d 1390, 1392 (9th Cir. 1985) . . . .
>
> Once the government has established the Powell elements, "'those opposing enforcement of a summons . . . bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service . . . . Without a doubt, this burden is a heavy one.'" United States v. Jose, 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc) (quoting LaSalle, 437 U.S. at 316). As we observed in Derr, "[e]nforcement of a summons is generally a summary proceeding to which a taxpayer has few defenses." United States v. Derr, 968 F.2d 943, 945 (9th Cir. 1992). "'The taxpayer must allege specific facts and evidence to support his allegations' of bad faith or improper purpose." Jose, 131 F.3d at 1328 (quoting Liberty, 778 F.2d at 1392).

Crystal v. United States, 172 F.3d 1141, 1143-44 (9th Cir. 1999) (parallel citations and footnote omitted).

In support of its prima facie case, respondent has provided a declaration by Revenue Agent Gregory Yarbrough. Declarant is a duly commissioned Revenue Officer employed by the IRS and was assigned to collect outstanding federal income tax liabilities owed by petitioner for the 1998, 1999, 2001 and 2002 tax years, as well as a civil frivolous filing penalty for the 2007 tax year. (Yarbrough Decl. (Doc. No. 3-2) at 1.) In the course of his collection efforts, declarant determined that petitioner and his spouse, Joan Lewis, had purchased a parcel of real property in Danville, California in 1992. (Id. at 2.) Revenue Agent Yarbrough also learned the following.

In July of 2002, the Lewises executed a quit claim deed transferring the property to the Diablo Vista Trust for no consideration, naming PATRA Services as trustee and stating that the transfer to the trust was "for the benefit of the grantor," the Lewises. (Id.) Lester

/////

1  Retherford signed on behalf of PATRA Services.[6]  (Id.)

2  On November 13, 2003, a Notice of Federal Tax Lien against petitioner was filed
3  with the County Recorder for Contra Costa County.  (Id. at 1-2.)  On October 12, 2005, a Notice
4  of Federal Tax Lien against the Diablo Vista Trust as a nominee of the Lewises was filed with
5  the County Recorder for Contra Costa County.  (Id. at 2.)  On October 31, 2005, the Diablo Vista
6  Trust executed a quit claim deed transferring the Danville Property to the "Office of Overseer of
7  Veritas Institute and his successors, A Corporation Sole, resident agent of which is Trioid
8  International, Inc."  (Id.)  On November 15, 2005, the Diablo Vista Trust executed a grant deed
9  transferring the Danville Property to the Veritas Institute.  (Id.)  On January 24, 2007, PATRA
10  Services, Inc., as trustee of the Diablo Vista Trust, executed another deed purporting to correct
11  the transfer of the Danville Property to the Veritas Institute.  (Id. at 2-3.)  No consideration was
12  recited for any of these property transfers.  (Id. at 3.)

13  On August 3, 2007, the Veritas Institute sold the Danville property.  (Id. at 3.)
14  Ms. Lewis signed the grant deed on behalf of the Veritas Institute.  (Id.)  In September of 2007,
15  the Veritas Institute purchased a single family residence located at 105 Prickly Pear Road, in
16  Verdi, Nevada.  (Id.)  In documents filed with the Nevada Secretary of State, Ms. Lewis is listed
17  as the only officer of the Veritas Institute.  (Id.)  Those documents also list the address of the
18  Veritas Institute as 105 Prickly Pear Road, Verdi, Nevada.  (Id.)

19  Declarant requested that petitioner disclose information regarding the various
20  entities involved in these property transactions.  (Id.)  Specifically, declarant requested that
21  petitioner provide the full financial position of himself and his spouse to evaluate the IRS's
22  collection potential by filling out a Form 433-A.  (Id.)  Petitioner partially filled-out the first three
23  pages of the form, but failed to note any information of his spouse or the Veritas Institute, and

---

[6] Lester Retherford was later convicted of conspiracy and willfully aiding and assisting in the preparation of fraudulent tax returns in connection with Tower Executive Resources scheme in connection with which petitioner was also convicted. (Yarbrough Decl. (Doc. No. 3-2) at 2.)

1  failed to return the document's signature page. (Id.)

2        Therefore, in furtherance of his collection efforts, declarant issued five
3  summonses to four parties that likely possess information regarding the Danville and Verdi
4  properties. (Id.) On March 22, 2011, declarant issued summons to Stewart Title and First
5  American Title. (Id.) On March 23, 2011, declarant issued summons to Coldwell Banker. (Id.)
6  On March 23, 2011, and again of March 24, 2011, declarant issued summons to People &
7  Properties, Sotheby's International Realty. (Id.) A notice of summons was also sent to petitioner
8  and to the Veritas Institute. (Id.)

9        The summonses direct the parties to produce certain books, papers, records, or
10 other data described in the summonses, including information regarding the Danville Property,
11 Veritas Institute, the Verdi Property, or some combination thereof. (Id. at 4.) Declarant has
12 received documents from all parties except Stewart Title, who is prepared to comply with the
13 summons pending the outcome of this motion to quash. (Id.) Declarant, however, has sealed and
14 segregated the documents he has received and has not reviewed them. (Id.)

15       Declarant asserts that the requested documents are relevant to his collection
16 efforts with respect to petitioner's federal income tax liabilities for tax years 1998, 1999, 2001,
17 2002 and 2007. (Id.) Declarant states that all administrative steps required by the Internal
18 Revenue Code for issuance and service of the summons were followed and that no Justice
19 Department criminal referral, as defined by 26 U.S.C. § 7602(d)(2), is in effect with respect to
20 petitioner for these tax years under investigation. (Id.)

21       Revenue Agent Yarbrough's declaration establishes that (1) the summonses
22 served were issued solely for the legitimate purpose of collecting petitioner's federal income tax
23 liabilities for tax years 1998, 1999, 2001, 2002 and 2007, (2) the records sought by the
24 summonses might be relevant to the purpose of respondent's collection efforts, (3) the
25 information and documents sought by the summonses were not already in the IRS's possession
26 when the summonses were issued and have not been examined since they were produced, and (4)

the administrative steps required by the Internal Revenue Code were followed.

The court finds that respondent has established a prima facie case in support of the summonses issued and has therefore met the government's initial burden. The burden shifts to petitioner to demonstrate that the summonses should be quashed.

In opposing respondent's motion to dismiss, petitioner raises several arguments.[7] Petitioner argues that: 1) the U.S. Department of Justice cannot represent the United States of America, 2) the IRS was not established by the Constitution or created by an Act of Congress, 3) respondent's summons authority is limited to enforcement related to alcohol, tobacco and firearms, and 4) respondent has not satisfied all of the Powell factors. The court will address each of these arguments in turn below.

I. United States of America

Petitioner argues that the Department of Justice cannot represent the United States of America, the respondent in this matter. Specifically, petitioner argues that pursuant to 28 U.S.C. § 547 and 28 U.S.C. § 3002, the U.S. Department of Justice can only represent the "United States." (Opp.'n (Doc. No. 5) at 4.) Petitioner argues that the "United States of America" is the "name assigned to the Union of states," which can only be represented by "their respective State Attorneys General," and that the "United States of America cannot be the sovereign entity United States . . . ." (Id. at 4-5.) Petitioner cites no legal authority in support of this argument and it is clearly frivolous. See Beresford v. I.R.S., No. 00-293 KI, 2000 WL 1274245, at *1 (D. Or. July 13, 2000) (finding the contention that the United States and the United States of America are two different entities and that the Department of Justice cannot represent one or the other to be frivolous).

/////

---

[7] Consistent with the arguments advanced in the petition to quash itself, the arguments made in petitioner's opposition are largely incoherent. Nonetheless, the court has attempted to decipher petitioner's arguments in opposition and has presented those arguments in the clearest and most concise manner possible.

1          Even assuming arguendo that there was some merit to petitioner's argument that
2   there exists a legal distinction between the "United States" and the "United States of America,"
3   his argument nonetheless fails for multiple reasons.  First, petitioner's motion to quash is brought
4   against the "UNITED STATES and/or UNITED STATES OF AMERICA."  (Pet. (Doc. No. 1) at
5   1.)  Second, "[a]n action to quash an IRS summons is a suit against the United States."  Barnes
6   v. U.S., 199 F.3d 386, 388 (7th Cir. 1999).  Finally, petitioner's motion to quash is also brought
7   against Revenue Officer Yarbrough (Pet. (Doc. No. 1) at 1) and under 28 U.S.C. 547(3), each
8   United States attorney, within his district, shall "appear in behalf of the defendants in all . . .
9   proceedings pending in his district against . . . officers of the revenue . . ."  Finally, "a suit against
10  IRS employees in their official capacity is essentially a suit against the United States." Gilbert v.
11  DaGrossa, 756 F.2d 1455, 1458 (9th Cir. 1985).
12         Accordingly, for all of these reasons petitioner's argument should be rejected.
13  II.  Authority of the IRS
14         Petitioner also argues that the IRS somehow does not have the authority to obtain
15  the information sought by Revenue Agent Yarbrough.  Specifically, petitioner denies that the
16  IRS, or its agents, have the "authority to hypothecate liability for any internal revenue tax
17  attributable to L. Albert Lewis."  (Opp.'n (Doc. No. 5) at 6.)  In this regard, petitioner asserts that
18  it is a "matter of public record that the alleged 'agency,' Internal Revenue Service, cannot be
19  demonstrated as a matter of law to have been created by an Act of Congress . . ."  (Id. at 7.)
20         "[T]he Internal Revenue Service is organized to carry out the broad
21  responsibilities of the Secretary of the Treasury under § 7801(a) of the 1954 Code for the
22  administration and enforcement of the internal revenue laws." Donaldson v. United States, 400
23  U.S. 517, 534 (1971).  The Secretary of the Treasury has full authority to administer and enforce
24  the internal revenue laws and has the power to create an agency to enforce those laws.  26 U.S.C.
25  § 7801; Young v. IRS, 596 F. Supp. 141, 147 (N.D. Ind. 1984).  "Like it or not, the Internal
26  Revenue Code is the law[.]"  Ryan v. Bilby, 764 F.2d 1325, 1328 (9th Cir. 1985).  See also

1  United States v. Zuger, 602 F. Supp. 889, 891-92 (D. Conn. 1984) (rejecting notion that a
2  prosecution was precluded because the U.S. Constitution did not explicitly refer to or create the
3  IRS or because the Internal Revenue Code was not enacted into "positive" law), aff'd., 755 F.2d
4  915 (2d Cir.), cert. denied, 474 U.S. 805 (1985); Young v. IRS, 596 F. Supp. at 149 (asserting
5  that "even if Title 26 was not itself enacted into positive law, that does not mean that the laws
6  under the title are null and void").

       Petitioner's argument that the IRS lacks the authority to obtain the documents
sought is therefore without merit and should be rejected . See Salman v. Department of
Treasury-Internal Revenue Service, 899 F. Supp. 471, 472 (D. Nev.1995) (finding plaintiff's
contention that the IRS is not an authorized agency of the United States to be frivolous); Young,
596 F. Supp. at 152 (finding plaintiff's reliance on the "positive" law argument to be a sign of his
bad faith).

III.  Alcohol, Tobacco & Firearms

       Apparently in the alternative, petitioner contends that the authority of the IRS to
issue summons is limited to activities involving alcohol, tobacco or firearms.  (Opp.'n (Doc. No.
5) at 16-17.)  This argument is likewise frivolous.  See United States v. Plemons, No. 3:05-CV-
282, 3:05-CV-283, 2005 WL 3817683, at *3 (E.D. Tenn. Dec. 1, 2005) (rejecting identical
argument as universally rejected and frivolous); Walter v. IRS, CV-F-94-5642 OWW DLB, 1994
WL 760812, * (E.D. Cal. Oct. 19, 1994) (finding that such a claim "has no foundation in law.")

       As noted above, however, the IRS is permitted to determine a person's tax
liability by examining the person's documents, taking the person's testimony, and issuing
summonses.  26 U.S.C. § 7602(a) (authorizing the IRS to issue summonses for the purposes of
"ascertaining the correctness of any return, making a return where none has been made,
determining the liability of any person for any internal revenue tax . . . or collecting any such
liability").  A person's tax liability is clearly not limited to activities involving alcohol, tobacco
or firearms.  See generally In re Bledsoe, 569 F.3d 1106, 1118 n. 3 (9th Cir. 2009) ("Income from

11

1  discharge of indebtedness is explicitly listed in the definition of gross income and its receipt is,
2  generally, a taxable event."); Bakersfield Energy Partners, LP v. C.I.R., 568 F.3d 767, 769 (9th
3  Cir. 2009) ("In general, a taxpayer's gross income includes gains from sales of property, where
4  'gain' is defined as the sales price minus the taxpayer's basis in the property.); United States v.
5  Gerads, 999 F.2d 1255, 1256 (8th Cir. 1993) ("Likewise, we have held that wages are within the
6  definition of income under the Internal Revenue Code and the Sixteenth Amendment, and are
7  subject to taxation.").

8         Accordingly, petitioner's argument that the authority of the IRS to issue summons
9  is limited to activities involving alcohol, tobacco or firearms should likewise be rejected.

10  IV.  Powell Factors

11         Finally, petitioner asserts that respondent has failed to satisfy the Powell factors.
12  Specifically, petitioner again argues in this regard that Officer Yarbrough's authority to issue
13  summons is limited to activities "relating to alcohol, tobacco and firearms . . ." (Opp.'n (Doc.
14  No. 5) at 18.)  Petitioner repeats his claim that because he has not engaged in those activities,
15  Officer Yarbrough's summonses were issued for an improper purpose and in bad faith.  (Id.)
16  Petitioner also argues in conclusory fashion that the summonses were issued for an improper
17  purpose because the "entire summons charade smacks of an illegal search and seizure . . ." (Id. at
18  19.)

19         As discussed above, Revenue Agent Yarbrough's authority to issue summons is
20  obviously not limited to activities relating to alcohol, tobacco or firearms.  Moreover, "'[t]he
21  taxpayer must allege specific facts and evidence to support his allegations' of bad faith or
22  improper purpose." Jose, 131 F.3d at 1328 (quoting Liberty Financial Services v. U.S., 778 F.2d
23  1390, 1392 (9th Cir. 1985).  Here, petitioner has offered no facts or evidence to support his
24  allegations of bad faith or improper purpose on the part of the Revenue Agent.

25         Finally, with respect to petitioner's rights under the Fourth Amendment, the
26  summonses issued by the IRS seeking documents in the possession of third-parties do not

implicate petitioner's rights under the Fourth Amendment. See S.E.C. v. Jerry T. O'Brien, Inc., 467 U.S. 735, 743 (1984) ("It is established that, when a person communicates information to a third party even on the understanding that the communication is confidential, he cannot object if the third party conveys that information or records thereof to law enforcement authorities."); Couch v. United States, 409 U.S. 322, 336 (1973) ("We hold today that no Fourth or Fifth Amendment claim can prevail where, as in this case, there exists no legitimate expectation of privacy and no semblance of governmental compulsion against the person of the accused."); Donaldson v. United States, 400 U.S. 517, 522 (1971) (summons directed to third party does not tread upon any interests protected by Fourth Amendment); Harris v. U.S.I.R.S., 758 F.2d 456, 457 (9th Cir. 1985) ("Such summonses issued to a third party recordkeeper do not violate the Fourth Amendment."); Muratore v. Department of Treasury, 315 F. Supp.2d 305, 310 (W.D. N.Y. 2004) ("As to the third-party summonses, however, because the documents sought have already been exposed to a third party, petitioners have no reasonable expectation of privacy, and, consequently, no Fourth Amendment objection to production of the documents."); Vanderhoof v. C.I.R., 73 F. Supp.2d 1165, 1169 (E.D. Cal. 1999) ("Also, Vanderhoof does not have a legitimate privacy interest in bank records and similar documents such that her Fourth Amendment rights would be violated by the disclosures required by the summonses.").

Accordingly, for the reasons stated above, petitioner's argument that respondent has failed to satisfy the Powell factors should also be rejected.

CONCLUSION

IT IS HEREBY ORDERED that petitioner's application to proceed in forma pauperis (Doc. No. 2) is granted.

For the reasons set forth above, IT IS RECOMMENDED that:

1. Petitioner's petition to quash IRS summons (Doc. No. 1) be denied;

2. Respondent's motion to dismiss (Doc. No. 3) be granted; and

3. This action be closed.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after this order is electronically filed and served on all parties, any party may file and serve written objections with the court. A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations." Any reply to objections shall be filed and served within fourteen (14) days after the objections are served. The parties are cautioned that failure to file objections within the specified time may, under certain circumstances, waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 9, 2012.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
ddad1\orders.civil\lewis0039.petquash.f&rs